

```
06 DEC -1  AM 11: 29

CLERK-ALBUQUERQUE
```

Benjamin A. Schwartzman
Wade L. Woodard, NMSB No. 9519
GREENER BANDUCCI SHOEMAKER P.A.
950 W. Bannock Street; Suite 900
Boise, ID 83702
Telephone: (208) 319-2600
Facsimile: (208) 319-2601

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| QUINN WOODARD, on behalf of himself and a Class of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL FINANCIAL, a foreign corporation,<br><br>Defendant. | CIV - 06 - 1170 RB WDS<br>Case No. _____<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

For his Complaint against defendant Fidelity National Financial ("Fidelity"), plaintiff Quinn Woodard, on behalf of himself and all others similarly situated, alleges as follows:

### I. BACKGROUND

1. For years, defendant and other underwriters of title insurance have illicitly reaped enormous financial windfalls at the expense of consumers by charging premium fees which are far in excess of statutorily-mandated rates. All homeowners are forced to purchase a policy of title insurance when they effect a refinance of an existing mortgage on their house. Although

CLASS ACTION COMPLAINT - 1

18701-001 (83570)

defendant (and its entire industry) is required by law to impose predetermined premiums for such policies, it routinely and systematically charges customers well in excess of these rates -- thereby collecting unlawful profit to the detriment of ordinary citizens.

2.      Title insurance is an unavoidable cost of any residential refinancing transaction. The lending institutions which underwrite a refinance are the actual beneficiaries of such policies, and these entities require that a homeowner purchase the coverage for their protection. Without title insurance, lenders generally refuse to provide a loan for a residential mortgage.

3.      What customers (and even real estate professionals) do not know is that all title insurers, including defendant, are compelled by law to publish and adhere to a schedule of exact rates for the policy premiums which they impose. These rates must be filed with the state insurance departments of those jurisdictions in which the title underwriters conduct business. Each title insurer's rate schedule sets precise limits - which cannot legally be exceeded -- on the price that may be charged for every given coverage amount. The rate schedules also mandate that policies issued for many refinance transactions cost significantly less than policies connected to a multi-party property sale.

4.      A title insurer's rate schedule actually lists the specific premium prices which may be charged for every possible level of coverage. By way of example, a loan of $100,000 (requiring $100,000 of coverage) will require a premium of exactly $605, while a loan of $110,000 (needing an additional $10,000 of coverage) must cost precisely $635. A title insurer's rate schedule will also expressly clarify that a "standard" policy – the type of coverage appropriate to a refinance transaction – must cost less than a "homeowner's" policy, which furnishes more expansive and expensive protection.

5.  Additionally, rate schedules dictate that under certain circumstances, customers who purchase title insurance in association with a refinance transaction are entitled to a substantially lower price than that charged for a multi-party sale. This discounted fee is denominated by various names, including "reissue," "refinance," "prior policy," or "substitution" rate (hereafter, collectively, the "reissue rate" or "reissue discount").

6.  Reissue rates are significantly lower than multi-party sale rates (often termed, the "basic" rate) because title companies perform less work in preparing a reissue policy, and also insure against less risk. Refinance transactions generally occur when there has been no change in ownership of a property, and a short period of time has elapsed since the homeowner purchased prior, valid title coverage. As a result, insurers are typically able to rely on the comprehensive investigations which have already been undertaken for the specific property and owner in question. Insurers therefore spend considerably less time and money conducting an updated title search for placement of a reissue policy. Additionally, reissue policies only protect policyholders against title-related claims that arise during the short period of time between placement of the original and the reissue policies. Consequently, a reissue policy insures against far less risk than a policy connected to a multi-party transaction.

7.  Since at least the mid-1990's, the title insurance industry, including defendants, has ignored the explicit legal limitations on their premium fees, and has knowingly overcharged untold individual homeowners by hundreds of dollars for policies. The insurers have perpetrated this deception in several distinct manners: (1) by failing to charge statutorily mandated, lower reissue rates in connection with residential refinance transactions; (2) by imposing fees which are higher than those expressly set forth in their statutory rate schedules, in essence charging consumers for more coverage than is actually contained in their policies; (3) by charging

premiums for needless and more expensive "homeowner's" (also called "owner's") coverage, instead of the cheaper "standard" coverage appropriate to refinance transactions.

8.  The industry itself admits that such overcharging by title insurers is a widespread phenomenon. Indeed, the Executive Vice President of the industry's trade association, the American Land Title Association, has acknowledged publicly that "[w]e know not everyone is familiar" with reissue rate discounts, and "[w]e know [overcharging] is a problem."[1] Yet the major title insurance underwriters, including defendants, continue to engage in these deceptive, misleading and illegal acts as a matter of policy and practice.

9.  Not surprisingly, the title insurance industry, including defendants, has profited handsomely by disregarding the law. For example, with interest rates in past years at a four decade low, eager homeowners have lined up to refinance their existing home loans. In 2002, Americans paid approximately $11 billion, up from $7.8 billion in 2000, for title insurance and related services.[2]

10. Title insurance underwriters have so grossly inflated the cost of their insurance that they now pay out only five to ten cents in claims for every dollar in premiums they collect.[3] This huge profit margin stands in sharp contrast to that of other insurance classes, such as property and casualty, where companies pay out as much as ninety cents for every premium dollar collected.

11. One of the two major home mortgage financiers, Fannie Mae, has noted publicly the financial drag that the title industry's exorbitant pricing places on homeowners. Fannie

---

[1] Kenneth R. Harney, Refinancers Should Seek Lower Rate on Refinance, The Baltimore Sun, April 13, 2003, at 1L.

[2] Ruth Simon, Good Deeds: Refinancing Boom Puts New Pressure on Title Industry, The Wall Street Journal, Dec. 18, 2002, at A1.

[3] Melynda Dovel Wilcox, Home Buyers Beware, Kiplinger's, Oct. 2001, at 96-100.

CLASS ACTION COMPLAINT - 4

18701-001 (183570)

Mac's vice president for credit policy has stated, '[i]t's safe to say that prices [of title insurance], in many respects, are higher than they ought to be."[4] The other major financier, Freddie Mac, went so far as to meet with title insurance executives, exhorting them to disclose their reissue rates and allow customers to benefit from the potentially huge savings which would result.[5] Undeterred, however, the industry continues to overcharge homeowners in violation of law.

12. As set for the below, consumers in the states of New Mexico, Arizona, Washington, Idaho and Oregon have fallen victim to these unlawful industry-wide policies and practices.

## II. THE PARTIES

13. Plaintiff Quinn Woodard is an individual residing in Albuquerque, Bernalillo County, New Mexico.

14. Defendant Fidelity is a title insurance company foreign to the State of New Mexico, which conducts substantial and continuous business in the jurisdiction of New Mexico.

## III. CLASS ALLEGATIONS

15. This class action is brought on behalf of plaintiffs and the Class members (defined below) to recover injunctive relief and damages for the harms caused by the defendant's pattern and practice of deceptive acts, as alleged herein.

16. Throughout the Class Period (defined below), defendant has caused plaintiff and the Class direct and compensable loss by charging them title insurance premiums which are patently in excess of the statutorily mandated fee rates governing such policies. Rather than abiding by governmentally filed rate schedules – which have the force of law pursuant to New Mexico Statutes Annotated §§ 59A-30-4 and 30-6, Arizona Revised Statutes § 20-376(D),

---

[4] Simon, supra, page 4.

[5] Kenneth R. Harney, Refinancing's Magic Words, The Washington Post, June 8, 2002, at H01.

Revised Code of Washington § 48.29.140, Idaho Code § 41-2706 and Oregon Revised Statutes § 737.205(1) – defendant has knowingly and deliberately overcharged its customers and kept the unlawful surplus for itself.

17.  The acts, practices and conduct of which plaintiff complains commonly affect a class of other individuals similarly situated ("the Class") consisting of all residential consumers in the states of New Mexico, Arizona, Washington, Idaho and Oregon who, at any time between the year 2000 and the present (the "Class Period"):

> (i) paid premiums for the purchase of title insurance from any of defendants in connection with a refinance transaction;
>
> (ii) were charged a higher premium than that set by law, as reflected in official statutory rate filings, for the amount of "standard" a/k/a "lenders" policy title insurance coverage which was actually issued and afforded in the refinance transaction because:
>
>> (a) the refinance transaction in question qualified for a lower reissue premium fee pursuant to official statutory rate filings with the insurance regulatory agencies of New Mexico, Arizona, Washington, Idaho and Oregon, but the residential consumer did not receive such reduced premium fee, or;
>>
>> (b) the premium fee for the policy involved in the refinance transaction exceeded the price set by official statutory rate filings with the insurance regulatory agencies of New Mexico, Arizona, Washington, Idaho and Oregon for the level of coverage actually issued and afforded, instead imposing a premium price which corresponded to a higher level/amount of coverage, or to a more expensive class of policy (e.g. an "owners policy").

18.  The Class, as defined, is identifiable and unambiguous based on objective information and criteria.

19.  The plaintiff is a member of the Class.

20.  The members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of thousands of individuals.

21.     There are questions of law and fact common to the members of the Class which predominate over any individual issues.

22.     The claims and defenses of plaintiff are typical of the claims of all members of the Class. By proving his case, plaintiff will simultaneously prove the case of the members of the Class.

23.     Plaintiff will fairly and adequately represent the Class. Plaintiff is willing and able to serve as representative of the Class, and has no knowledge of any possible divergent interest between or among plaintiff and any member of the Class. Plaintiff has retained highly competent counsel experienced in class action and complex litigation to provide representation on behalf of plaintiff and the Class.

24.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendant.

25.     The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

26.     Questions of law and fact common to members of the Class predominate over any questions affecting individual members. The determinative facts and legal principles apply universally among plaintiff and the members of the Class. Indeed, the predominating legal issue in this case, which cuts across the entire Class, is whether defendant breached legal duties universally owed to plaintiff and the members of the Class in failing to charge premium fees for title insurance which correspond to the express, unambiguous rate schedules on file with the

insurance regulatory agencies of Class members' states: New Mexico, Arizona, Washington, Idaho and Oregon. If liability against defendant is established on the basis of the common facts applied to the universally-applicable principles of law, then damages can be precisely calculated based on objective data.

27. No aspect of this litigation will render it unmanageable when conducted as a class action. In fact, the maintenance of a class action with regard to the claims at issue is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will avoid unnecessary duplication or waste of litigant and judicial resources. Moreover, it is likely that the great expense of pursuing individual suits to redress defendant's common course of conduct alleged herein would, as a practical matter, effectively preclude plaintiff and Class members from protecting and enforcing their legal rights.

## IV. FACTUAL ALLEGATIONS

### Plaintiff Quinn Woodard

28. New Mexico Statutes Annotated §§ 59A-30-4 and 30-6 require that all title insurers comply with an explicit rate premium schedule which is promulgated and maintained by the New Mexico Division of Insurance ("NMDI"). Such rate schedule defines the precise premiums to be charged for every policy of title insurance. The statutes also dictate that title insurers may not legally deviate from the prices set forth therein.

29. Yet in direct and knowing contravention of these laws, defendant Fidelity has overcharged plaintiff Quinn Woodard for a policy of title insurance by imposing a premium fee which was higher than that explicitly obliged in New Mexico's official rate list.

30. In May of 2005, Mr. Woodard executed a refinance of the existing mortgage on his home located 8016 Waterbury Avenue NW, Albuquerque, New Mexico. As part of this

transaction, Mr. Woodard was required to purchase a policy of title insurance for his new mortgage lender. Mr. Woodard consequently paid to defendant Fidelity a premium for the purchase of a title insurance policy.

31. Defendant Fidelity, and/or its agent, acted as the settlement agent and/or title insurance agent for Mr. Woodard's refinance transaction.

32. At all relevant times, New Mexico's official state rate schedule maintained by the NMDI established that the policy premium charged in a refinance transaction must be discounted by 10-25% from the basic rate otherwise applicable to the coverage being purchased.

33. Mr. Woodard qualified for and was entitled to receive the discounted reissue rate for the premium he paid to defendant Fidelity in connection with his May, 2005, refinance. Mr. Woodard had purchased a prior title insurance policy on the same premises at issue. The mortgage giving rise to this earlier policy was reflected in the chain of title and credit report relative to Ms. Woodard's property, and was therefore well known and verifiable by reliable proof.

34. However, in violation of New Mexico's official rate schedule and the provisions of N.M.S.A. §§ 59A-30-4 and 30-6, defendant Fidelity failed to charge Mr. Woodard the discounted reissue price, instead imposing a more expensive premium fee.

35. This wrongful conduct was in direct accord with defendant Fidelity's uniform and customary business practices of: (a) overcharging consumers for title policies by failing to accord them discounted reissue rates in connection with qualifying refinance transactions, and; (b) failing to inform such customers that they qualify (or may qualify) for such discounted rates.

36. As a result of defendant Fidelity's imposition of an illegal and excessive title insurance premium, Mr. Woodard has been financially damaged in an amount equivalent to the

difference between the lawful price he should have paid for coverage and the actual sum he was deceived into tendering.

## COUNT 1
### (Declaratory Relief and Injunctive Relief)

37.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint as if fully written herein.

38.     There is a dispute among the parties regarding their rights, obligations, and legal relations, which is ripe for judicial determination.

39.     Plaintiff and the Class members are entitled to an order declaring that:

A.

(i) they qualified for lower reissue rates in connection refinance transactions;

(ii) defendant was obligated to inform them of this fact and give them such lower reissue rates;

(iii) defendant violated the laws of New Mexico, Arizona, Washington, Idaho and Oregon by failing to give plaintiff and the Class members the lower reissue rates for which they qualified, and by failing to inform plaintiff and the Class members that they qualified for such discounted rates;

B.

(i) the amount and classification (i.e., "standard" / "lender's" policy) of their title insurance coverage mandated that they receive a lower premium price than that which they actually received;

(ii) defendant was obligated to inform them of this fact and give them such lower price;

(iii) defendant violated the laws of New Mexico, Arizona, Washington, Idaho and Oregon by failing to give plaintiff and the Class members the lower premiums which

corresponded to their amount and classification of coverage, and by failing to inform plaintiff and the Class members that they qualified for such lower premiums.

40.     Plaintiff and the Class members are entitled to a permanent injunction requiring defendant to notify in writing all owners of residential real estate who, in the context of a refinance transaction, pay premiums for the purchase of title insurance from defendants of: (1) the conditions upon which they may qualify for a reissue rate, and the reduced amount of that rate; (2) the exact price of the officially rate scheduled premium for a "lender's" title policy which corresponds to the coverage amount being written.

41.     Plaintiff and the Class have no adequate remedy at law which would accomplish the relief sought in this Count.

## COUNT 2
### (Violations of Title Insurance Rate Filing Statutes: N.M.S.A. §§ 59A-30-4; 30-6; A.R.S. §§ 20-376 – 20-379; R.C.W. § 48.29.140; I.C. §§ 41-2705 - 41-2707, and; O.R.S. §§ 737.205 – 737.330)

42.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully written herein

43.     Pursuant to express statutes governing title insurance premiums in New Mexico, Arizona, Washington, Idaho and Oregon – N.M.S.A. §§ 59A-30-4 and 30-6; A.R.S. §§ 20-376 – 20-379; R.C.W. § 48.29.140; I.C. §§ 41-2705 - 41-2707; O.R.S. §§ 737.205 – 737.330 – defendant owed a uniform legal duty to all purchasers of title insurance policies to charge no more than the precise rates on file with state regulatory agencies (the NMDI, the Arizona Department of Insurance, or "ADI," the Washington Office of the Insurance Commissioner, or "WIC," the Idaho Department of Insurance, or "IDI," and the Oregon Insurance Department, or "OID").

44. As alleged herein, defendant knowingly and/or negligently violated this explicit legal duty by imposing title insurance premiums in excess of applicable filed rates.

45. As a direct and proximate result of defendant's violations of applicable rate filing statutes, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT 3
### (Breach of Contract)

46. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 45 of this Complaint as if fully written herein.

47. Defendant entered into identical implied purchase contracts with plaintiff and the Class members, consecrated through offer, acceptance, and exchange of consideration (hereinafter called the "Contract") for the acquisition of a title insurance policy.

48. The Contract included, without limitation, the obligation to charge a premium strictly in accordance with the rate schedules filed by defendants with all relevant state insurance regulatory agencies (the NMDI, ADI, WIC, IDI and OID).

49. Defendant was obligated pursuant to the Contract, without limitation, to: (a) charge plaintiff and the Class members discounted reissue rates for title insurance; (b) to inform plaintiff and the Class members that they qualified for such discounted rates; (c) to charge plaintiff and the Class members the exact price of the officially rate scheduled premium for a "lender's" title policy which corresponded to the coverage amount being written.

50. Defendant breached the Contract by, without limitation: (a) overcharging plaintiff and the Class members through failures to give them discounted reissue rates for title insurance; (b) failing to inform plaintiff and the Class members that they qualified for such discounted rates; (c) charging plaintiff and the Class members prices in excess of the officially rate

CLASS ACTION COMPLAINT - 12

scheduled premium for a "lender's" title policy which corresponded to the coverage amount being written.

51.  As a direct and proximate result of defendant's breaches of contract, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

### COUNT 4
### (Violations of Consumer Protection Statutes:
### N.M.S.A. § 57-12-1, et seq.; R.C.W. § 19.86.010, et seq.; A.R.S. § 44-1521, et seq.; O.R.S. § 646.605, et seq.)

52.  Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 51 of this Complaint as if fully written herein.

53.  In connection with its sales of title insurance policies to plaintiff and to each member of the Class, defendant deceptively charged and collected premium amounts in excess of those authorized by official rate filings. As a component of these deceptive sales, defendant uniformly misrepresented to plaintiff and the Class the legally allowable price of its policy premiums, and similarly failed to disclose to plaintiff and the Class true and material information relevant to the legally appropriate premium prices.

54.  Defendant has maintained, and continues to maintain, a routine, customary and uniform practice of failing to give discounted reissue rates to residential customers, and failing to inform customers that they qualified for such discounts.

55.  Defendant has additionally maintained, and continues to maintain, a routine, customary and uniform practice of charging plaintiff, Class members and residential customers in excess of the officially rate scheduled premium for a "lender's" title policy which corresponded to the coverage amount being written.

56.     Defendant has made the misrepresentations and omissions of fact enumerated herein with the intent to induce plaintiff and the members of the Class to rely upon such deceptive statements and non-disclosures.

57.     Plaintiff and the Class members have all reasonably and justifiably – and in an identical manner – relied upon defendant's non-disclosures to their detriment.

58.     As a direct and proximate result of defendant's deceptive conduct, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

59.     Defendant acted knowingly, wrongfully, intentionally, with actual malice and/or with reckless disregard for the rights of plaintiff and the Class members in perpetrating its deceptive scheme of overcharging for title insurance premiums.

## COUNT 5
### (Conversion)

60.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 59 of this Complaint as if fully written herein.

61.     Defendant's conduct, as described herein, amounts to conversion.

62.     As a direct and proximate result of defendant's conversion of monies belonging to plaintiff and the Class members, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT 6
### (Unjust Enrichment)

63.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 62 of this Complaint as if fully written herein.

64.     Defendant has been unjustly enriched at the expense of plaintiff and the Class members.

65. As a direct and proximate result of defendant's unjust enrichment, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT 7
### (Breach of Duty of Good Faith and Fair Dealing)

66. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 65 of this Complaint as if fully written herein.

67. Defendant owed plaintiff and the Class members a duty of good faith and fair dealing throughout the duration of their transactions involving sales of title insurance policies.

68. Defendant breached its duty of good faith and fair dealing by: (1) failing to give plaintiff and the Class members discounted reissue rates for which they qualified; (2) by failing to inform plaintiff and the Class members that they qualified for such discounted rates, and; (3) by charging plaintiff and the Class members in excess of the officially rate scheduled premium for a "lender's" title policy which corresponded to the coverage amount being written.

69. As a direct and proximate result of defendant's breaches of its duty of good faith and fair dealing, plaintiff and the Class members have suffered damages in an amount to be proved at trial.

WHEREFORE, plaintiff demands judgment as follows:

1. For an order declaring that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for an order certifying this case as a class action and appointing plaintiff as class representative;

2. For an order declaring that:

A.

(i) plaintiff and Class members qualified for lower reissue rates in connection with refinance transactions;

CLASS ACTION COMPLAINT - 15

18701-001 (183570)

(ii) defendant was obligated to inform them of this fact and give them such lower reissue rates;

(iii) defendant violated the laws of New Mexico, Arizona, Washington, Idaho and Oregon by failing to give plaintiff and the Class members the lower reissue rates for which they qualified, and by failing to inform plaintiff and the Class members that they qualified for such discounted rates;

**B.**

(i) the amount and classification (i.e., "standard" / "lender's" policy) of plaintiff's and Class members' title insurance coverage mandated that they receive a lower premium price than that which they actually received;

(ii) defendant was obligated to inform them of this fact and give them such lower price;

(iii) defendant violated the laws of New Mexico, Arizona, Washington, Idaho and Oregon by failing to give plaintiff and the Class members the lower premiums which corresponded to their amount and classification of coverage, and by failing to inform plaintiff and the Class members that they qualified for such lower premiums;

3.  For a permanent injunction requiring defendant to notify in writing all owners of residential real estate who, in the context of a refinance transaction, pay premiums for the purchase of title insurance from defendant of: (1) the conditions upon which they may qualify for a reissue rate, and the reduced amount of that rate; (2) the exact price of the officially rate scheduled premium for a "lender's" title policy which corresponds to the coverage amount being written;

4.  For compensatory damages on behalf of plaintiff and the Class members in an amount to be proved at trial;

CLASS ACTION COMPLAINT - 16

18701-001 (183570)

5. For leave to file, pursuant to applicable state laws, a prayer for punitive damages in an amount sufficient to deter similar wrongful conduct on the part of defendant and other title insurance companies;

6. For an order that plaintiff and the Class be awarded all expenses, costs, and disbursements incident to the prosecution of this action, including reasonable attorneys' fees; and

7. For such other and further relief as allowed by law and/or as is equitable under the circumstances.

DATED THIS 28th day of November, 2006.

GREENER BANDUCCI SHOEMAKER P.A.

By_____
Benjamin A. Schwartzman
Wade L. Woodard, NMSB No. 9519
950 West Bannock Street
Suite 900
Boise, Idaho 83702
Tel. (208) 319-2600


Paul M. Weiss
FREED & WEISS, LLC
111 West Washington Street
Suite 1331
Chicago, Illinois 60602
Tel. (312) 220-0000


Attorneys for Plaintiff and the Class