IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **QUINN WOODARD, on behalf of himself** ) | |
| **and a class of others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | No.  CIV 06-1170 RB/WDS |
| ) | |
| **FIDELITY NATIONAL TITLE** ) | |
| **INSURANCE COMPANY, a foreign corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss [Doc. 8], filed April 13, 2007.  Defendant moves to dismiss Plaintiff's Second Amended Complaint [Doc. 19] on two grounds: (1) "lack of standing to assert claims arising in states other than New Mexico" and (2) "failure to state a claim" on any one of Plaintiff's eight causes of action.  (Motion to Dismiss at 1-3).  Jurisdiction appears to arise under 28 U.S.C. § 1332(d).[1]  (Order [Doc. 18] at 1, 3).  Having considered the submissions, determining that oral argument is unnecessary, and being otherwise fully advised, I hereby **DENY** Defendant's 12(b)(1) motion, **GRANT** Defendant's 12(b)(6) motion in part, and **DENY** Defendant's 12(b)(6) motion in part.

**I.   BACKGROUND**

Plaintiff Quinn Woodard refinanced the mortgage on his 8016 Waterbury Avenue, N.W., Albuquerque home in May 2005.  (2nd Am. Compl. at ¶ 31).  As part of the transaction, Plaintiff's lender (not a party to this suit) required Plaintiff to purchase a lender's title insurance policy, indemnifying the lender should a defect arise in the title.  Plaintiff purchased a lender's title

---

[1] (See Order to Show Cause [Doc. 28]).

insurance policy from Defendant Fidelity National Title Insurance Company. (Id.). On August 21, 2007, Plaintiff filed a Second Amended Class Action Complaint. Plaintiff alleges that Defendant overcharged him for the lender's title insurance. (Id. at ¶¶ 30, 35-37). Plaintiff asserts six common law and two statutory causes of action against Defendant: (1) declaratory and injunctive relief; (2) breach of implied contract; (3) conversion; (4) unjust enrichment; (5) money had and received; (6) breach of the duty of good faith and fair dealing; (7) violation of insurance rate filing statutes in New Mexico, Arizona, Washington, Idaho, and Oregon (collectively, "Other States"); and (8) violation of unfair trade practices statutes in New Mexico, Arizona, Washington, and Oregon.[2] (Id. at ¶¶ 38-75). Both parties agree that Plaintiff does not assert individual claims based on the law of Other States. (Def.'s Mem. Supp. Mot. Dismiss [Doc. 9] at 3; Pl.'s Mem. Law Opp'n [Doc. 10] at 8-9). Instead, Plaintiff seeks class certification under Fed. R. Civ. P. 23(a), (b)(1)(A), (b)(1)(B), and (b)(3) and seeks to represent putative class members in states other than New Mexico. (2nd Am. Compl. at ¶¶ 16-28).[3]

---

[2] Plaintiff does not allege a violation of Idaho's unfair trade practices statute. (2nd Am. Compl. at 14).

[3] There are two other substantially similar cases in federal district courts in Washington and Idaho. Each encompasses identical class action claims for New Mexico, Arizona, Washington, Idaho, and Oregon – except the Washington case does not involve a money had and received claim. The first case is Lewis v. First Am. Title Ins., No. 06-478 (D. Idaho filed Nov. 28, 2006). The second case is Jepson v. Ticor Title Ins. Co., No. 06-1723 (W.D. Wash. filed Nov. 29, 2006). Plaintiffs proceed against different defendants in all three cases, but Freed & Weiss, L.L.C. represents all plaintiffs.

In Jepson, the defendant title insurance company also submitted a motion to dismiss based on the plaintiff's alleged lack of standing to assert claims of putative class members in Other States and failure to state a claim on the statutory, breach of contract, and breach of the duty of good faith and fair dealing claims. There, the court decided class certification was "logically antecedent" to the standing question, dismissed the statutory title insurance filing rate claim, and sustained all other claims. Jepson v. Ticor Title Ins. Co., 2007 U.S. Dist. LEXIS 53480, at *5, *7, *10 (W.D. Wash. May 1, 2007).

Unlike Jepson and the case before the Court, there are two named plaintiffs in Lewis, the Idaho case. Plaintiff is also a named plaintiff in Lewis. It is unclear if Plaintiff refinanced the same New Mexico residence twice. (See 2nd Am. Compl. at ¶ 31). Nevertheless, he alleges injury by two separate title insurance companies for two separate home refinance transactions in two separate cases. (See id.; Lewis v. First Am. Title Ins., No. 06-478 (D. Idaho Sept. 25, 2007) (order granting in part and denying in part motion to dismiss)). In Lewis, the defendant title insurance company submitted a motion to dismiss all eight counts, but has not yet challenged the plaintiffs' standing to assert claims outside of Idaho and New Mexico. There, the court dismissed the Idaho and New Mexico statutory title insurance filing rate claims, conversion claims, and money had and received claims, yet sustained all

**II.     DISCUSSION**

    **A.     Defendant's 12(b)(1) Motion to Dismiss for Lack of Standing**

        **1.     Party Contentions**

Defendant asserts a 12(b)(1) facial attack on Plaintiff's standing. (Def.'s Mem. Supp. Mot. Dismiss at 3). Because Plaintiff's individual allegations arise purely under New Mexico law, and because there are currently no other named plaintiffs from the Other States, Defendant avers that Plaintiff lacks standing to assert claims under any Other State law. (Id. at 3-6). The Court understands Defendant's argument as challenging the injury prong of Plaintiff's Article III standing because Plaintiff has not pled facts showing that he has legally protected rights arising out of Other State law. (Id.). Defendant also avers that the Court should consider Plaintiff's interstate standing before engaging in a class certification inquiry. (Id. at 4; Def.'s Reply Supp. Mot. Dismiss [Doc. 12] at 3-6).

Plaintiff primarily responds by maintaining that he has established Article III standing and that the law requires nothing more at the pleading stage. (Pl.'s Mem. Law Opp'n at 6-9). In particular, Plaintiff asserts that he has established both injury and causation. (Id. at 7-9). Plaintiff maintains that his complaint does not allege that his injury violated the laws of the Other States, but rather that his claims are representative of claims arising in Other States. (Id. at 9). Finally, Plaintiff asserts that "copious federal precedent establishes that . . ." the Court should consider class certification prior to "issues of interstate standing." (Id. at 8 n.8).

---

remaining claims. Lewis v. First Am. Title Ins., No. 06-478 (D. Idaho Sept. 25, 2007) (order granting in part and denying in part motion to dismiss).

### 2. Standard

"[A 12(b)(1)] facial attack . . . as to subject matter jurisdiction questions the sufficiency of the complaint." Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). "In addressing a facial attack on the plaintiff's assertion of subject matter jurisdiction, [a] . . . court must accept the allegations in the complaint as true." United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001).

### 3. Article III Standing

Article III standing arises from the Constitution's "case or controversy" requirement. Warth v. Seldin, 422 U.S. 490, 498 (1975). To satisfy Article III standing, a plaintiff must establish three elements: (1) actual or imminent injury in fact that is concrete and particularized, (2) a causal connection that establishes that the plaintiff's injury is fairly traceable to the defendant's alleged conduct, and (3) that a favorable decision by the Court is likely to redress the plaintiff's injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted); Rodriguez-Aguirre, 264 F.3d at 1204. Invasion of a legally protected right, including a common law right, is sufficient to establish injury. Erwin Chemerinsky, Federal Jurisdiction § 2.3.2 (5th ed. 2007) (citing Tenn. Elec. Power Co. v. Tenn. Valley Auth., 306 U.S. 118, 137-38 (1939)). Article III standing must be the Court's first consideration. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-103(1998); Mount Evans Co. v. Madigan, 14 F.3d 1444, 1451 (10th Cir. 1994).

### 4. "Logically Antecedent" is a Limited Exception Applicable Only When the Class Action Nature of a Case Creates the Standing Question

Because standing is a jurisdictional question, courts generally treat standing as a "threshold matter." See Steel Co., 523 U.S. at 93-95; Rodriguez-Aguirre, 264 F.3d at 1204. The Supreme Court, however, announced an exception to the typical approach in Amchem Prod., Inc. v. Windsor:

4

if "class certification issues" are "logically antecedent to the existence of any Article III issues," a court may properly consider class certification first. 521 U.S. 591, 612-13 (1997). Amchem was on appeal from the Third Circuit, and in announcing the "logically antecedent" language, the Supreme Court recognized that "the Third Circuit declined to reach the [standing] issues because they 'would not exist but for the [class action] certification.'" Id. at 612. The Supreme Court reiterated the exception in Ortiz v. Fibreboard Corp. 527 U.S. 815, 831 (1999).

The Tenth Circuit has not interpreted the meaning of "logically antecedent," nor has it otherwise decided whether courts should address standing or class certification first. The Fifth Circuit's application of the Supreme Court's "logically antecedent" language, however, properly focuses on the cause of the standing question. Rivera v. Wyeth-Ayerst Lab., 283 F.3d 315, 319 n.8. (5th Cir. 2002). In a case brought by a class including residents of all fifty states under the Texas Deceptive Trade Practices Act and unjust enrichment claims,[4] the court described the "logically antecedent" language as a limited exception applicable only when a case's class action nature creates the standing question. Id. Testing Rivera against the exception, the Fifth Circuit asked whether "the standing question would exist whether [the plaintiff(s)] filed the claim alone or as part of a class." Id. The court found that the standing question would exist either way because the plaintiffs had individual Article III standing problems – injury and causation. Id. at 319-21. Accord Ford v. Nylcare Health Plans, Inc., 301 F.3d 329, 333 (5th Cir. 2002) (applying the limited exception and also finding that the plaintiff had an individual Article III standing problem – causation). Cf. 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:5 (4th ed. 2007) (2002) (highlighting that "a proper party to raise a particular issue is before the court" once the class representative meets

---

[4] Plaintiffs also brought other claims and brought all claims under Texas law. Rivera, 283 F.3d at 317.

threshold individual standing, "and there [is] no . . . separate class standing requirement in the constitutional sense. The presence of individual standing is sufficient to assert [common] issues. . .") (internal quotations omitted). It is noteworthy that the Fifth Circuit essentially rephrased the Third Circuit causal language that resulted in the Supreme Court's pronouncement of the "logically antecedent" exception. See Amchem, 521 U.S. at 612. Cf. Conte & Newberg, supra, at § 2:7 (noting that after a named plaintiff meets individual standing requirements, the question of whether he may assert the rights of absent class members is not a standing issue, but rather depends on meeting Rule 23 prerequisites).

### 5. Plaintiff Establishes Individual Article III Standing and Does Not Allege Injury Under Other State Law

Plaintiff easily meets the Article III requirements for individual standing. First, Plaintiff clearly alleges that he suffered an injury. (E.g., 2nd Am. Compl. at ¶¶ 30, 35) (stating that Plaintiff was overcharged). Plaintiff unequivocally alleges that Defendant caused his injury. (Id.) Moreover, this Court has the power to redress the alleged wrong via the remedies sought by Plaintiff. (See id. at 17-19). Lastly, Plaintiff does not need to establish standing for the Other State class action claims because he does not allege personal injury under Other State law. (Def.'s Mem. Supp. Mot. Dismiss at 3; Pl.'s Mem. Law Opp'n at 8-9). Defendant merely asserts that his claims are typical of those arising in Other States. (2nd Am. Compl. at ¶ 23).

### 6. Even If a Standing Question Exists, the "Logically Antecedent" Exception Applies

Relying in part upon Ninth Circuit reasoning, Defendant asserts that Amchem/Ortiz is inapplicable because those cases involved challenges to mandatory asbestos global settlement subclasses. (See Def.'s Mem. Supp. Mot. Dismiss at 4 n.1; Def.'s Reply at 4-5). Defendant's argument is unpersuasive, however, because the Supreme Court did not base its "logically

6

antecedent" rationale on distinctions among subclasses or class action cases, but rather upon the cause of the standing question. See Amchem, 521 U.S. at 612; Rivera, 283 F.3d at 319 n.8. Defendant also asks the Court to rely on a district court case, *In re* Terazosin Hydrochloride Antitrust Litigation, which instructs that "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." 160 F. Supp.2d 1365, 1371 (S.D. Fla. 2001). Defendant fails to recognize, however, that the Terazosin court was bound to follow Eleventh Circuit precedent, a circuit that has not addressed the Supreme Court's "logically antecedent" exception. This Court cannot lightly disregard controlling Supreme Court precedent and chooses not to do so today.

Here, Plaintiff's situation clearly falls within the limited exception laid out by the Supreme Court. Defendant's entire 12(b)(1) motion rests on the fundamental assumption that the class action nature of the case undermines Plaintiff's standing. (Def.'s Mot. Dismiss at 1-2). The law, however, dictates a contrary result. Applying the question of whether the Plaintiff's putative standing problem would exist but for the class action nature of this case, it is clear that if Plaintiff does suffer from a standing problem, the problem is a result of his seeking to represent putative class members in Other States. In such situations, the Supreme Court permits federal courts to examine those questions in terms of typicality and adequacy at the class certification stage. See Amchem, 521 U.S. at 612-13; Ortiz, 527 U.S. at 831. Because the Court believes class certification is the most appropriate stage to determine whether typicality and/or adequacy require a named plaintiff to have individual standing to assert each and every claim, the Court chooses to pursue that course of action.[5]

---

[5] The Court acknowledges that the Defendant also raises prudential third-party standing concerns. (See Def.'s Mem. Supp. Mot. Dismiss at 5-6). One of the fundamental goals of the class action device is the protection of third-party interests. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402-03 (1980). Therefore, the Court believes class certification is also the most appropriate stage to examine whether third-party standing concerns render Plaintiff's representation inadequate and/or atypical.

7

**B.    Defendant's 12(b)(6) Motion to Dismiss**[6] **for Failure to State a Claim**[7]

**1.    Standard**

In reviewing a defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, courts accept the plaintiff's factual allegations and view them in the light most favorable to the plaintiff. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Whether a particular claim will survive a motion to dismiss depends on whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); Ridge, 493 F.3d at 1177. In other words, "the mere metaphysical possibility" that the plaintiff's factual allegations could state a claim will not suffice. Ridge 493 F.3d at 1177. Instead, the plaintiff must provide the court with "reason to believe that [the] plaintiff has a reasonable likelihood of mustering factual support for [the asserted] claims." Id. (interpreting Twombly's declaration that a "plaintiff[ must] nudge[ his] claims across the line from [the] conceivable to [the] plausible . . ."). Finally, a court is not obligated to accept a plaintiff's "conclusory allegations, unwarranted inferences, or legal conclusions." Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994).

Federal courts sitting in diversity "seek to ascertain and apply . . . state law." Wade v. EMCASCO Ins. Co., 483 F.3d 657, 665 (10th Cir. 2007) (internal quotations omitted). If state law does not address the issue, federal courts "must . . . predict what the state's highest court would do." Id. at 666 (internal quotations omitted). To determine what the highest court would do, federal

---

[6] The Court acknowledges Defendant's Motion to Strike (Def.'s Reply Supp. Mot. Dismiss at 1-2) and, without deciding the admissibility issue, assures the Defendant that the Court did not consider the Washington report in making any determination under this order.

[7] Defendant appears to seek dismissal of only the New Mexico claims, presumably because they could provide the representative basis for the class claims. (Def.'s Mot. Dismiss at ¶¶ 1-8).

courts may look to "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." Id. (internal citations and quotations omitted).

### 2. New Mexico Title Insurance Rate Filing Statute (Count 2)

New Mexico state statutes and regulations require title insurance companies to adhere to a specified premium rate schedule when they engage in refinancing transactions. N.M. Stat. Ann. §§ 59A-30-4, -6 (LexisNexis 2007); N.M. Code R. § 13.14.9.39. Because these provisions do not establish an express private right of action, however, the issue is whether they contain an implied private right of action. (See Def.'s Mem. Supp. Mot. Dismiss at 8-9; Pl.'s Mem. Law Opp'n at 12-13). Federal courts must exercise care in recognizing an implied private right of action arising out of state law, however, because they have very limited authority to do so. See Nat'l Trust for Historic Pres. v. City of Albuquerque, 874 P.2d 798, 801 (N.M. Ct. App. 1994) (comparing a federal court's ability to recognize an implied private right of action with a state court's ability to do the same).

Both parties cite New Mexico state statutory and case law for their contrary assertions that the law does, or does not, embrace an implied private right of action. Plaintiff relies heavily on Ruiz v. Garcia, 850 P.2d 972 (N.M. 1993), which interpreted N.M. Stat. Ann. § 59A-30-11, and proclaims that the case "categorically" establishes an implied private right of action against title insurance companies. (Pl.'s Mem. Law Opp'n at 12-13). In order for an implied right of action to exist, Defendant responds, the New Mexico Legislature must have intended to create such a right. (Def.'s Mem. Supp. Mot. Dismiss at 8-9).

9

The test to determine whether a New Mexico statute embraces an implied private right of action is, indeed, legislative intent. See Lewis, No. 06-478 (order dismissing New Mexico rate filing statute claim); Key v. Chrysler Motors Corp., 918 P.2d 350, 354 (N.M. 1996). But cf. Nat'l Trust, 874 P.2d at 801-02 (noting that, in contrast to a federal court, a state court may look to public policy, and beyond legislative intent, to imply a private right of action). Consequently, in order to convince the Court that the New Mexico Supreme Court would imply a private right of action into Section 59A-30-4 or Section 59A-30-6, the Plaintiff must provide the Court with evidence that the New Mexico Legislature intended to do so. Lewis, No. 06-478 (order finding that the plaintiff failed to introduce any evidence of legislative intent).

Plaintiff fails to state a claim because he pleads no "legislative facts" tending to show that the legislature intended to create a private right of action under either section. Moreover, Ruiz is inapposite because the New Mexico Legislature subsequently amended Section 59A-30-11 to clarify that the section does not "create any right or cause of action in favor of any person other than a title insurer." 1999 N.M. Laws Ch. 60, § 20. The Court, therefore, has no "reason to believe that [the] [P]laintiff has a reasonable likelihood of mustering factual support for [the asserted] claim[]." Ridge 493 F.3d at 1177. The Court declines Plaintiff's invitation to act as a judicial pioneer in the realm of state law and hereby dismisses the New Mexico claim under Count 2.

### 3. New Mexico Unfair Trade Practices Statute (Count 4)

The Tenth Circuit does not impose the Fed. R. Civ. P. 9(b) heightened pleading requirement upon unfair trade practices claims, and New Mexico courts do not require plaintiffs to plead such claims with particularity. Accordingly, the Court does not require Plaintiff to plead this count with particularity, especially in light of the legislative intent issues likely implicated by such a requirement. Moreover, Defendant cannot contend that Plaintiff's pleadings do not "afford the

[D]efendant fair notice of [P]laintiff's claims and the factual ground upon which they are based[]" – the underlying purpose of Fed. R. Civ. P. 9(b). Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations and brackets omitted).

To state a claim under the New Mexico unfair trade practices statute, a plaintiff must state facts tending to show four elements:

> (1) Defendant[] made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly[8] made in connection with the [sale of goods or services]; (3) the representation occurred in the regular course of the representor's trade or commerce; and (4) the representation may, tends to, or does, deceive or mislead any person.

Russey v. Rankin, 911 F. Supp. 1449, 1459-60 (10th Cir. 1995) (quoting Ashlock v. Sunwest Bank, 753 P.2d 346, 347 (N.M. 1988), overruled on other grounds by, Gonzales v. Surgidev Corp., 899 P.2d 576 (N.M. 1995)) (internal quotations omitted). See also Lewis, No. 06-478 (order sustaining New Mexico unfair trade practices claim).

Here, Plaintiff states a claim for relief. First, Plaintiff alleges that Defendant, and/or its agent "uniformly misrepresented to plaintiff . . . the legally allowable price of its policy premiums" during the refinancing transaction. (2nd Am. Compl. at ¶¶ 31-32, 54). Second, Plaintiff alleges that Defendant knowingly made this representation in the course of business. (Id. at ¶¶ 34-36, 55-57, 60). Lastly, Plaintiff alleges that the Defendant deceived him. (Id. at ¶¶ 29-37, 54-60). Plaintiff has mustered enough factual support to state a plausible claim. Consequently, Defendant's motion to dismiss the New Mexico unfair trade practices claim (Count 4) is denied.

---

[8] New Mexico law does not require the Plaintiff to prove intent. See Russey v. Rankin, 911 F. Supp. 1449, 1460 (10th Cir. 1995).

### 4. New Mexico Breach of Implied Contract (Count 3)

New Mexico law does not favor implied contracts, especially when the contracting parties have a written agreement. Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 80 (N.M. 1993) (citing Stern v. Dunlap Co., 228 F.2d 939, 942 (10th Cir. 1955)). Accordingly, "[t]he general rule is that an implied [contract] cannot coexist with express [contracts] that specifically cover the same subject matter." Cont'l Potash, 858 P.2d at 80. Whether or not there is an implied-in-fact contract is a question of fact that depends on the parties' intent.[9] See Garcia v. Middle Rio Grande Conservancy Dist., 918 P.2d 7, 10, 15 n.1 (N.M. 1996). See also Stern, 228 F.2d at 942-43; Cont'l Potash, 858 P.2d at 80.

Defendant avers that an implied contract "cannot exist between" Plaintiff and Defendant because the terms of an express contract between Defendant and Plaintiff's lender abrogate the terms of any such contract. (Def.'s Mem. Supp. Mot. Dismiss at 9-10). Defendant does not convince the Court of this assertion, however, because Continental Potash and Stern do not stand for the proposition an implied contract cannot exist where an express contract exists between one party and a third party. See Stern, 228 F.2d at 942; Cont'l Potash, 858 P.2d at 80. Defendant also maintains that Plaintiff cannot point to "a single action" by Defendant that would tend to show intent to create an implied contract. (Def.'s Mem. Supp. Mot. Dismiss at 10). Contrary to this assertion, Plaintiff sufficiently alleges that he "paid to defendant Fidelity a premium for the purchase of a title

---

[9] In a case substantially similar to the one now facing the Court (also involving Defendant), a federal district court set out the necessary elements for pleading an implied-in-fact contract in the title insurance context. Randleman v. Fidelity Nat'l Title Ins. Co., 465 F. Supp.2d 812, 818-19 (N.D. Ohio 2006). A plaintiff must allege: (1) payment of a premium, (2) the "lender was the beneficiary of th[e] title insurance policy," (3) the title insurance company had an "obligation to charge a premium [conforming to] the rate schedule," (4) the title insurance company charged more than the rate set out by the schedule, and (5) the title insurance company failed to disclose to the plaintiff that he "qualified for [a] discounted rate." Id. See also, Jepson, 2007 U.S. Dist. LEXIS 53480, at *8-9.

insurance policy."[10] (2nd Am. Compl. at ¶ 31). See also, Lewis, No. 06-478 (order sustaining New Mexico breach of implied contract claim).

Viewing the facts in the light most favorable to the nonmovant, Plaintiff's pleadings give the Court "reason to believe that [the] [P]laintiff has a reasonable likelihood of mustering factual support for [the asserted] claim[]." Ridge 493 F.3d at 1177. Defendant's motion to dismiss the New Mexico implied contract claim (Count 3) is, therefore, denied.

### 5. New Mexico Breach of the Duty of Good Faith and Fair Dealing (Count 8)

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co. v. Home Ins. Co., 801 P.2d 639, 642 (N.M. 1990). Though New Mexico cases describe the duty in a somewhat different manner, all agree that the duty "requires that neither party do anything which will deprive the other of the benefits of the agreement." Id. See also Bourgeous v. Horizon Healthcare Corp., 872 P.2d 852, 856 (N.M. 1994); Cont'l Potash, 858 P.2d at 82; Ruegsegger v. W. N.M. Univ., 154 P.3d 681, 690 (N.M. Ct. App. 2006).

Plaintiff asserts a violation of the duty of good faith and fair dealing that allegedly arises out of the purported implied purchase contract between Plaintiff and Defendant (see 2nd Am. Compl. at ¶ 73; Pl.'s Mem. Law Opp'n at 22-23), not, as Defendant avers, on the basis of an insurance contract (Def.'s Mem. Supp. Mot. Dismiss at 14-15). As indicated above, Plaintiff sufficiently sustained his breach of implied contract claim. Supra at 24-25. Should that contract exist, so, too, will the duty of good faith and fair dealing. Reviewing the Plaintiff's pleading in a favorable light,

---

[10] Plaintiff also sufficiently alleges his lender was the beneficiary of the policy, Defendant was obligated to adhere to the rate schedule, Defendant overcharged Plaintiff, and Defendant failed to inform Plaintiff that he qualified for a lower rate. (2nd Am. Compl. at ¶¶ 29-36, 51).

the Court finds that Plaintiff has provided the Court with reason to believe he can garner more facts tending to show that Defendant deprived Plaintiff of his benefit of the agreement. (2nd Am. Compl. at ¶¶ 73-75). Accordingly, Defendant's motion to dismiss the New Mexico breach of the duty of good faith and fair dealing claim (Count 8) is denied.

### 6.     New Mexico Unjust Enrichment (Count 6)

New Mexico courts recognize unjust enrichment claims. Ontiveros Insulation Co. v. Sanchez, 3 P.3d 695, 698 (N.M. Ct. App. 2000). Unjust enrichment claims are "essentially the same" as those brought in "quasi-contract, implied-in-law contract, and quantum meruit," Hydro Conduit Corp. v. Kemble, 793 P.2d 855, 861 (N.M. 1990), and "provide relief" to parties who cannot recover contractual relief, Ontiveros, 3 P.3d at 698-99. See also, Elliott Indus. Ltd. P'ship v. BP America Prod. Co., 407 F.3d 1091, 1117 (10th Cir. 2005) (affirming district court's ruling that New Mexico law did not permit unjust enrichment claims where the same parties had an express contract). Unjust enrichment is couched in equity and seeks to do justice. See Hydro, 793 P.2d at 861. Two elements comprise an unjust enrichment claim: (1) one party "has . . . knowingly benefitted at [another's] expense (2) in [such] a manner . . . that . . . ret[ention of] the benefit would be unjust." Ontiveros, 3 P.3d at 698.

Defendant once again resorts to the averment that the contract between Plaintiff's lender and Defendant bars recovery on any implied contract – under this claim, an implied-in-law contract. (Def.'s Mem. Supp. Mot. Dismiss at 13-14). And, again, the Court finds that the existence of an express contract between Plaintiff's lender and Defendant does not control. See Elliott, 407 F.3d at 1117. Equity does not care about Defendant's contract with a third party, though it would care about an implied-in-fact purchase contract between Plaintiff and Defendant. See id. Noting that Plaintiff's unjust enrichment claim incorporates the factual allegations  from his implied-in-fact

14

contract claim, the Court finds reason to believe the Plaintiff can muster enough facts to support both prongs of unjust enrichment. (2nd Am. Compl. at ¶¶ 64-66). Defendant's motion to dismiss Plaintiff's New Mexico unjust enrichment claim (Count 6) is denied.

### 7. New Mexico Money Had and Received (Count 7)

A money had and received claim in New Mexico is the equivalent of an unjust enrichment claim. See Miller v. Bourdage, 653 P.2d 177, 180 (N.M. Ct. App. 1982). See also Lewis, No. 06-478 (order dismissing New Mexico money had and received claim). The New Mexico money had and received claim is redundant, and the Court, therefore, dismisses the claim under Count 7.

### 8. New Mexico Conversion (Count 5)

The "wrongful detention [of personal property] amounting to repudiation of the owner's rights" is conversion. Case Credit Corp. v. Portales Nat'l Bank, 966 P.2d 1172, 1174 (N.M. 1998). See also, Nosker v. Trinity Land Co., 757 P.2d 803, 807-08 (N.M. Ct. App. 1988). Any "exercise of dominion [or control over personal property belonging to another] which is inconsistent with the owner's rights" also constitutes conversion. Molybdenum Corp. of America v. Brazos Eng'g Co., 472 P.2d 971, 973 (N.M. 1970) (internal quotations omitted). See also, Case Credit, 966 P.2d at 1174; Nosker, 757 P.2d at 807. New Mexico also adopts the view "that there are situations in which a wilful omission which deprives the plaintiff of his property can serve as a foundation for the action of conversion." Case Credit, 966 P.2d at 1174 (internal brackets omitted). Finally, New Mexico law does not require the defendant to benefit from the conversion. Id.

Plaintiff has stated a plausible claim for conversion under New Mexico law. Plaintiff avers that he paid a premium to Defendant (2nd Am. Compl. at ¶ 31). This tends to indicate that Plaintiff either had title to, or a right to immediate possession of, the money that constituted the premium payment. Plaintiff also avers that Defendant charged him an unlawful premium. (2nd Am. Compl.

at ¶¶ 29-30, 33-37). Plaintiff's assertion that Defendant "overcharged" him is evidence that Defendant may have either wrongfully detained, or acted in a way inconsistent with, Plaintiff's purported right to the money. (2nd Am. Compl. at ¶¶ 30, 35-36). Plaintiff's allegation that Defendant "kept the unlawful surplus for itself" tends to show that Defendant may have repudiated Plaintiff's purported right to the money – or exercised dominion and control over the money. (2nd Am. Compl. at ¶ 17). Moreover, Plaintiff asserts that Defendant willfully failed to disclose the appropriate premium indicated under the rate schedule. (2nd Am. Compl. at ¶¶ 36-37).

Viewing the facts in the light most favorable to the Plaintiff, the Court believes that Plaintiff has adequately shown that he may muster further facts to support the conversion claim. But see Lewis, No. 06-478 (order dismissing New Mexico conversion claim). Defendant's motion to dismiss the New Mexico conversion claim is denied.

### 9. Declaratory and Injunctive Relief (Count 1)

A declaratory judgment is remedy available "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A plaintiff requesting a permanent injunction must establish four elements. eBay, Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839 (2006).

> [The] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. A preliminary injunction differs from a permanent injunction in that a plaintiff seeking a permanent injunction must achieve actual success on the merits, while a plaintiff seeking a preliminary injunction must only show a likelihood of success on the merits. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).

Here, Plaintiff seeks a declaratory judgment and a permanent, mandatory injunction directing Defendant to notify all of its refinancing title insurance consumers as to: "(1) the conditions upon which they may qualify for a reissue rate, and the reduced amount of that rate; (2) the exact price of the officially [sic] rate scheduled premium for a lender's title policy which corresponds to the coverage amount being written." (2nd Am. Compl. at ¶ 41). Defendant contends that the Plaintiff is ineligible for permanent injunctive relief because he is not at risk of suffering future harm from Defendant. (Def.'s Mem. Supp. Mot. Dismiss at 7-8). According to the Defendant, Plaintiff's awareness of discounted premiums, as demonstrated by this case, is sufficient to prevent future harm. (Id. at 8). Plaintiff primarily responds by pointing to the availability of declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2). (Pl.'s Mem. Law Opp'n at 10-12). Plaintiff also argues that, despite his knowledge about discounted premiums, he may nevertheless be the subject of future harm. (Id. at 11-12).

The Court is not prepared to declare the parties' rights or obligations or decide upon an appropriate remedy, if one is required, before making a determination on class certification and/or other counts in the complaint. Dismissal of Plaintiff's claim for declaratory relief would be premature at this stage and is, therefore, denied.

Plaintiff is not eligible for permanent injunctive relief. The Court agrees with Defendant's argument that the Plaintiff's knowledge of discounted premiums, as demonstrated by both this case and the Idaho suit, is sufficient to put him on guard. Plaintiff has not demonstrated that he either did or will suffer an irreparable injury. Moreover, Plaintiff offers nothing more than a conclusory statement to prove that remedies at law are inadequate. (2nd Am. Compl. at ¶ 42). Finally, Plaintiff's resort to Fed. R. Civ. P. 23(b)(2) is inapposite because Plaintiff did not plead his case

17

under Fed. R. Civ. P. 23(b)(2). (See id. at ¶¶ 25-28). Defendant's Motion to Dismiss Plaintiff's claim for injunctive relief is granted.

To the extent that a claim for prospective injunctive relief compelling notice to future consumers remains,[11] Defendant's motion is denied. Compare Jaffee v. United States, 592 F. 2d 712, 715, 720 (3rd Cir. 1979) (allowing injunctive warning claim to go forward despite named plaintiff's knowledge of harm) with Mink v. Univ. of Chicago, 460 F. Supp. 713, 723 (N.D. Ill. 1978) (dismissing injunctive notice claim because named plaintiffs were aware of the danger).

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Standing [Doc. 8], filed April 13, 2007, is **DENIED**, Defendant's Motion to Dismiss the New Mexico claims under Counts Two and Seven and the individual injunctive claim under Count One is **GRANTED**, and Defendant's Motion to Dismiss the New Mexico claims under Counts Three, Four, Five, Six, and Eight, as well as the declaratory judgment claim under Count One, is **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE

---

[11] At issue is whether a claim for prospective injunctive notice could ever go forward if, by virtue of bringing suit, all named plaintiffs demonstrate sufficient knowledge to protect them from future harm. This issue may, or may not, fall under the auspices of "capable of repetition, yet evading review," but need not be decided today. See Mink v. Univ. of Chicago, 460 F. Supp. 713, 723 (N.D. Ill. 1978).