# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**QUINN WOODARD, on behalf of himself
and a class of others similarly situated,**

      **Plaintiff,**

**vs.**                                                            **No.  CIV 06-1170 RB/WDS**

**FIDELITY NATIONAL TITLE
INSURANCE COMPANY, a foreign corporation,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff's Motion for Class Certification, filed on March 5, 2008.  Having considered the submissions, applicable law, and being otherwise fully advised, Plaintiff's Motion for Class Certification is **DENIED**.

## I.     BACKGROUND.

Plaintiff Quinn Woodard refinanced the mortgage on his 8016 Waterbury Avenue, NW, Albuquerque home in May 2005.  As part of the transaction, Plaintiff's lender required Mr. Woodard to purchase a lender's title insurance policy, indemnifying the lender should a defect arise in the title.  Plaintiff purchased a lender's title insurance policy from Defendant Fidelity National Title Insurance Company (hereinafter "Fidelity").  Mr. Woodard alleges that the premium fee Fidelity charged him for title insurance exceeded the statutorily-mandated rate.  On December 1, 2006, Mr. Woodard commenced this suit on behalf of himself and all others similarly situated in Arizona, Idaho, New Mexico, Oregon, and Washington.  Among Mr. Woodard's initial claims, the following causes of action survived Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6): Claim for

Declaratory Relief, Breach of Implied Contract, Violation of Consumer Protection Statutes, Conversion, Unjust Enrichment, and Breach of Duty of Good Faith and Fair Dealing.  On March 5, 2008, Mr. Woodard filed his Motion for Class Certification.  Plaintiff seeks to certify the following class:

> Persons in the states of Arizona, Idaho, New Mexico, Oregon, and Washington who, in connection with a mortgage refinancing, paid a title insurance premium for a Fidelity title insurance policy, the amount of which exceeded the rate on file in those states and/or exceeded a lower, refinance rate for which such persons qualified.

## II.   APPLICABLE STANDARDS.

As the party seeking class certification, Plaintiff has the burden of demonstrating "under a strict burden of proof" that the requirements for a class action under Rule 23 are "clearly met." *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).  In analyzing whether a plaintiff has met that burden, the Court "must accept the substantive allegations of the complaint as true;" however, the Court will not "blindly rely on conclusory allegations which parrot Rule 23" and may also take into consideration legal and factual issues presented by Plaintiff's complaint. *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004).

### A.  Federal Rule of Civil Procedure 23(a).

Pursuant to Rule 23(a), a class may be certified only if all four of the following prerequisites are demonstrated by the Plaintiff: (1) Numerosity, "the class is so numerous that joinder of all members is impracticable;" (2) Commonality, "there are questions of law or fact that are common to the class;" (3) Typicality, "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) Adequacy of representation, "the representative parties will fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(a).

#### 1.  Numerosity.

The burden is upon the party seeking to represent a class to establish that the class is so numerous as to make joinder impracticable. *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976).  "In class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978).  When the identity of class members is difficult to ascertain, plaintiffs need not allege the exact number of class members; however, they must produce some level of evidentiary support for a reasonable estimate of the number of class members who may be involved. *See Id.* at 435-36; *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  Indeed, a numerosity determination may not be based on mere speculation. *See Peterson*, 545 F.2d at 1273.

### 2.  Commonality.

The Supreme Court has held members of a putative class must "possess the same interest and suffer the same injury." *General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  This commonality requirement is met if putative class members' grievances share a common question of law or of fact. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).  Commonality requires that only a single issue be common to the class. *Id.*

### 3.  Typicality.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23.  Typicality serves as a guidepost for determining whether, under the particular circumstances of the lawsuit, the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *General Tele. Co. of Southwest*, 457 U.S. at 158 fn. 13.  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long

3

as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

### 4. Adequacy of Representation.

Adequacy of representation raises concerns about the competency of class counsel and conflicts of interest. *General Tele. Co. of Southwest*, 457 U.S. at 158 fn. 13. The Court is required to rigorously investigate two questions in order to determine legal adequacy of representation: (1) Do the named plaintiff and his counsel have any conflicts of interest with other class members? (2) Will the named plaintiff and his counsel prosecute the action vigorously on behalf of the class? *Rutter &Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

### B. Federal Rule of Civil Procedure 23(b)(3).

Under Rule 23(b)(3), a class action may only be maintained if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and the proposed class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to the Court's inquiry into the predominance and superiority requirements: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance.

Predominance requires that the issues in a class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only

to individualized proof. *See* Fed.R.Civ.P. 23(b)(3).  In a multi-state class action suit, determining which state's or states' substantive laws will apply to putative class members' claims, as a practical matter, can be the determinative issue for purposes of predominance analysis.

### 2. Superiority.

The superiority requirement necessitates that the Court engage in the pragmatic exercise of determining whether a particular class action is preferable to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed.R.Civ.P. 23(b)(3).

## III.   DISCUSSION.

In this case, the Court concludes that Plaintiff has failed to meet his burden under Rule 23 to establish numerosity, typicality, adequacy, predominance, and superiority.  Because the requirements of Rule 23 tend to overlap, the Court will address them together, within the context of each particular facet of the Plaintiff's suit that makes certification inappropriate. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 fn. 20 (1997); *General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 fn. 13 (1982).

The Court notes, as a preliminary matter, that Plaintiff is correct in his assertion that the proposed class definition is qualitatively identical to several other class actions which have garnered certification, with the only difference being that Plaintiff here seeks to certify a multi-state class. *See, e.g., Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773 (N.D. Ohio 2008); *Randleman v. Fidelity National Title Ins. Co.*, 251 F.R.D. 267 (N.D. Ohio 2008); *Woods v. Stewart Title Guar. Co.*, 2007 WL 2872219 (D. Md. 2007).  It is, however, the multi-state nature of the proposed class action that renders the putative class unsuitable for certification.  Contrary to Plaintiff's assertion that every title premium overcharge case to date has received class certification, an almost identical multi-state class action suit against a title insurer brought in the District of Kansas also failed to meet

the requirements for certification under Rule 23. *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683 (D. Kansas 2007).  More generally, courts have routinely refused to grant class certification in multi-state suits involving the type of manageability problems that arise when a single court would be required to apply varying standards of liability to multiple causes of action and determine punitive damages under the laws of various states. *See, e.g., Chilton Water Auth. V. Shell Oil Co.*, 199 WL 162800, at *8 (M.D. Ala. 1999); *Mack v. General Motors Acceptance Corp.*, 169 F.R.D. 671, 678-79 (M.D. Ala. 1996); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. 1996); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 679 (N.D. Ga. 2003); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 294 (S.D. Ohio 1997); *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 629-32 (D. Kan. 1996); *Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 541 (D. Kan. 1995); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341-42 (N.D. Ill. 1997); *Doll*, 246 F.R.D. at 691-94.

Although the alleged injury in this case is factually similar for every member of the putative class, there are materially different standards of liability among the five jurisdictions for claims brought by Plaintiff on behalf of the putative class.  As a result, Plaintiff's claims are not typical of the claims of putative members of other states. *See General Tele. Co. of Southwest*, 457 U.S. at 158. Similarly, based on the fact that Plaintiff's legal claims would be evaluated under different legal standards than those of putative class members from other states, the Court is unable to find that Plaintiff can adequately represent the interests of the proposed members of this multi-state class. *Adamson*, 855 F.2d at 676.  Furthermore, the issues in a class action that are subject to generalized proof must predominate over those issues that are subject only to individualized proof. *See* Fed.R.Civ.P. 23(b)(3).  The varying standards of liability among the five jurisdictions for putative class members' claims destroys Plaintiff's ability to present generalized proof for the claims of all

6

class members, thereby undermining predominance. *See Id.* Finally, the complexity of applying the differing laws of the five states to the putative class members' claims makes the class action unmanageable and weighs against a finding that the proposed multi-state class action would be superior to alternative methods of adjudication. *See* Fed.R.Civ.P. 23(b)(3)(D). While the small amount of the alleged overcharges makes a class action superior to requiring individual claims against Fidelity, the proposed class is not preferable to the obvious alternative of single-state class action suits brought separately in the state courts of each of the five jurisdictions. Indeed, the interests of putative class members would be much better served by single-state class action suits brought by a plaintiff only on behalf of individuals located within his or her home state. *See Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 345-46 (10th Cir. 1973).

### A.  Certification Issues Arising From Conflicts of Laws.

Plaintiff's argument that the laws applicable to putative class members' claims are substantively the same across all jurisdictions is incorrect. A careful review of the laws of the five jurisdictions reveals a number of conflicts of law which are material to this case. Although the laws of the five states often differ only in nuances, the Court finds that some of these nuances would be important to the legal resolution of putative class members' claims in this suit. In addition, the varying standards of liability across the five jurisdictions would undermine typicality, adequacy of representation, predominance, and superiority. Furthermore, simply applying New Mexico's substantive law to all claims would violate the Due Process Clause and the Full Faith and Credit Clause. *See Phillips Petroleum Co.*, 472 U.S. at 818; *Sun Oil Co. v. Wortman*, 486 U.S. 717, 729 (1988). Indeed, the Supreme Court has instructed that, in multi-state class action suits, the substantive law of the forum state only may be applied (1) when the laws of the relevant states do not actually conflict or (2) where the forum state has "a significant contact or significant aggregation

of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.*  If the laws of the relevant states conflict, and if the forum state lacks a significant state interest in the lawsuit, then this Court, sitting in diversity, must resolve the conflicts in accordance with the choice of law rules of the forum state. *See Sun Oil Co.*, 486 U.S. at 722.  Incidentally, New Mexico has adopted the Restatement (Second) of Conflicts of Law for choice of law issues arising in multi-state class action lawsuits.  *Ferrell v. Allstate Ins. Co.*, 144 N.M. 405, 188 P.3d 1156, 1164 (N.M. 2008).

Under the Restatement (Second) of Conflicts of Law, the rights and duties of the parties with respect to issues in contract are determined by the local law of the state which has the most significant relationship to the transaction and the parties, generally the state in which the contract was negotiated and formed. Restatement (Second) of Conflict of Laws § 188 (1971).  Similarly, the rights and liabilities of the parties with respect to issues in tort are determined by the local law of the state which has the most significant relationship to the injurious event, generally the state in which the conduct causing the injury occurred.  Restatement (Second) of Conflict of Laws § 145 (1971).  The contract and tort claims at issue in this case are most significantly related to the states in which the title insurance contracts were made and in which the alleged injuries occurred; therefore, the claims of nonresident class members require adjudication under the laws of the putative class members' home states. *Ferrell*, 188 P.3d at.1173.  Furthermore, claims arising under the five states' Consumer Protection/Consumer Fraud Statutes require adjudication under the particular statutory frameworks set forth by each state's statute.  The need to examine and apply the laws of each of the five states renders the proposed class action unmanageable and certification of the class unacceptable.  Indeed, because variations in the laws of the five states swamp any common issues and defeat predominance, the Court must deny certification of the proposed class.

### 1. Violation of Consumer Protection/Consumer Fraud Statutes.

The Consumer Protection/Consumer Fraud Statutes of the five jurisdictions materially conflict in a number of ways, including the type of acts covered by the statutes, statutory exclusions, and specified scienter requirements. For example, Oregon and Washington's Consumer Protection Statutes merely require an unfair or deceptive act made in the course of trade or commerce in order to establish liability. *See* OR. Rev. Stat. § 646.608 (2003); Wash. Rev. Code § 19.86.020 (1961). Arizona's Consumer Fraud Statute, on the other hand, requires a deceptive act, misrepresentation, or omission of a material act with intent that others rely upon the concealment, suppression or omission in connection with the sale of any merchandise. *See* Ariz. Rev. Stat. Ann. § 44-1522 (1992). New Mexico's Consumer Fraud Statute requires an unfair or deceptive trade practice knowingly made in connection with the sale of goods or services. N.M. Stat. § 57-12-2 (2003). Finally, Idaho's Consumer Protection Act specifically excludes claims based on unfair or deceptive acts or practices in the business of insurance. *See* Idaho Code Ann. § 48-605(3) (1971). In other words, putative class members in Oregon and Washington would merely have to demonstrate that it was unfair or deceptive for Fidelity to overcharge them for title insurance. Putative class members in Arizona would be required to make an additional showing of intent, and putative class members in New Mexico would be required to make a different additional showing that Fidelity knowingly overcharged them for title insurance. Finally, putative class members in Idaho would not even have a claim under their state's Consumer Protection Act. These varying standards of liability would render the case difficult to manage, undermine Plaintiff's ability to fairly and adequately protect the interests of class members from other jurisdictions, and destroy any possibility of adjudicating putative class members' claims in accordance with a generalized standard of proof. *See General Tele. Co. of Southwest*, 457 U.S. at 158. Thus, the differing standards of liability under the five

9

states' Consumer Protection/Consumer Fraud Statutes would undermine the Rule 23 requirements of typicality, adequacy of representation, predominance, and superiority.

### 2. Unjust Enrichment.

The elements of unjust enrichment also conflict in legally significant ways among the five jurisdictions.[1]  In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment, and (5) an absence of a remedy provided by law. *City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984).  In Idaho, Oregon, and Washington, on the other hand, three elements must be established for unjust enrichment: (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit, and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value.  *Dragt v. Dragt/DeTray*, LLC, 139 Wash.App. 560, 576, 161 P.3d 473, 482 (Wash. Ct. App. 2007); *Summer Oaks Ltd. Partnership v. McGinley*, 183 Or.App. 645, 654, 55 P.3d 1100, 1105 (Or. App. 2002); *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (Idaho 1999).  In New Mexico, however, to prevail on an unjust enrichment claim, a plaintiff only must show that (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 203, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  As a legal matter, the different showings required by

---

[1]In each of the five states, putative class members' claims for breach of implied contract would merge with their unjust enrichment claims. *See Barmat v. John and Jane Doe Partners A-D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (Ariz. 1987)*; Continental Forest Products, Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (Idaho 1974); *Tom Growney Equipment, Inc. v. Ansley*, 119 N.M. 110, 112, 888 P.2d 992, 994 (N.M. Ct. App.1994); *Jaqua v. Nike, Inc.*, 125 Or.App. 294, 298, 865 P.2d 442, 445 (Or. Ct. App. 1993); *Lynch v. Deaconess Medical Center*, 113 Wash.2d 162, 164-65, 776 P.2d 681, 682-83 (Wash. 1989).

putative class members from different jurisdictions to prove unjust enrichment would undermine Plaintiff's ability to present generalized proof for all putative class members' unjust enrichment claims. *See* Fed.R.Civ.P. 23(b)(3). Similarly, Plaintiff's ability to fairly and adequately represent putative class members from other jurisdictions would also be compromised, inasmuch as his claims would be evaluated under a different standard of liability and require different evidence. Thus, the different standard of liability across the five states destroy typicality, adequacy of representation, predominance, and superiority. As a practical matter, applying the different standards of liability for putative class members from different states would almost certainly confuse the jury. These type of manageability issues that would arise when a single court is required to apply varying standards of liability to multiple causes of action undermine superiority. *See* Fed.R.Civ.P. 23(b)(3).

### 3. Conversion.

The law of conversion among the five jurisdictions also conflicts in material ways, including different scienter requirements. Arizona and Oregon have adopted the Restatement (Second) of Torts, which defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, 104 P.3d 193, 203 (Ariz. Ct. App. 2005); *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413, 781 P.2d 1196, 1201 (Or. 1989). Under Idaho law, conversion is "an act of dominion wrongfully exerted over the personal property of another in denial or in unwarranted interference with his rights therein." *Adair v. Freeman*, 92 Idaho 773, 777, 451 P.2d 519, 523 (Idaho 1969). New Mexico has defined conversion as a "wrongful detention amounting to repudiation of the owner's rights or any exercise of dominion inconsistent with such rights." *Apodaca v. Unknown Heirs*, 98 N.M. 620, 624, 651 P.2d 1264, 1268 (1982). Under Washington law, conversion is "the unjustified, willful interference with

11

a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham and Kolde*, 153 Wash.2d 553, 564, 106 P.3d 212, 218 (Wash. 2005). Of particular significance to this case, the law of New Mexico allows for a wrongful retention of funds to constitute conversion, but the other four states, with the possible exception of Idaho, require an affirmative act for the tort of conversion. *Apodaca*, 98 N.M. at 624, 651 P.2d at 1268. Because the proposed class representative, Plaintiff, would be required to demonstrate conversion under a different and less stringent standard of liability, his claim is not typical of putative class members from the other four jurisdictions, nor is he an adequate representative of putative class members from the other four jurisdictions. *See Adamson*, 855 F.2d at 676. Furthermore, predominance is undermined because putative class members' conversion claims would not be subject to generalized proof. *See* Fed.R.Civ.P. 23(b)(3).

### 4. Breach of the Duty of Good Faith and Fair Dealing.

In each of the five jurisdictions, the essence of the duty of good faith and fair dealing is that neither party will act to impair the right of the other to receive benefits which flow from their agreement or contractual relationship. *See Beaudry v. Insurance Co. of the West*, 203 Ariz. 86, 91, 50 P.3d 836, 841 (Ariz. Ct. App. 2002); *Taylor v. Browning*, 129 Idaho 483, 490, 927 P.2d 873, 880 (Idaho 1996); *Sanders v. FedEx Ground Package System, Inc.*, 144 N.M. 449, 188 P.3d 1200, 1203 (N.M. 2008); *Best v. U.S. Nat. Bank of Oregon*, 303 Or. 557, 565, 739 P.2d 554, 559 (Or. 1987); *Badgett v. Security State Bank*, 116 Wash.2d 563, 570-72, 807 P.2d 356, 360-61 (Wash. 1991). However, the legal scope and requirements of a claim for breach of the duty of good faith and fair dealing differ markedly among the five states. The differences create a situation in which putative class members in Arizona and Oregon have relatively straightforward claims for breach of the duty of good faith and fair dealing. *See Beaudry*, 203 Ariz. at 91, 50 P.3d at 841; *Best*, 303 Or. at 565,

12

739 P.2d at 559. However, putative class members in Idaho and Washington cannot state a claim for breach of the duty of good faith and fair dealing upon which relief can be granted. *See Taylor*, 129 Idaho at 490, 927 P.2d at 880; *Badgett*, 116 Wash.2d at 570-72, 807 P.2d at 360-61. Putative class members in New Mexico, including the Plaintiff, have only a novel claim requiring particularized evidentiary showings.[2] *See Sanders*, 144 N.M. at 449, 188 P.3d at 1203.  Because the elements of Plaintiff's legal claim for breach of the duty of good faith and fair dealing, under New Mexico law, are materially different from those of the putative class members from the other four states, Plaintiff fails to meet the typicality requirement. *Adamson*, 855 F.2d at 676. Similarly, based on the fact that Plaintiff's legal claims would be evaluated under different legal standards than those of putative class members from other states, the Court is unable to find that Plaintiff can adequately represent the interests of the proposed members of this multi-state class. *See General Tele. Co. of Southwest*, 457 U.S. at 158 fn. 13. Furthermore, predominance is undermined because putative class members' conversion claims would not be subject to generalized proof. *See* Fed.R.Civ.P. 23(b)(3).

### 5.  Punitive Damages.

The law in the five different jurisdictions concerning punitive damages varies greatly, including with respect to the following issues: specific exclusions for punitive damages for particular claims, the conduct by the defendant that must be shown, the degree of harm that must

---

[2]Under Arizona law, a party may breach its duty of good faith without actually breaching an express covenant in the contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 491, 38 P.3d 12, 29 (Ariz. 2002).  In Idaho, the covenant of good faith and fair dealing "arises only regarding terms agreed to by the parties." *Taylor*, 129 Idaho at 490, 927 P.2d at 880.  In New Mexico, breach of the implied covenant of good faith and fair dealing requires "a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders*, 188 P.3d at 1203. Under Oregon law, a party is presumed to have acted in bad faith, in breach of the doctrine of good faith and fair dealing, when (1) a party has the right to a specific price term and (2) the other party sets the price term either too high or too low. *See Best*, 303 Or. at 565, 739 P.2d at 559.  In Washington, the duty of good faith implied in every contract does not exist apart from the terms of the agreement. *Badgett*, 116 Wash.2d at 572, 807 P.2d at 361.

be demonstrated, different standards of proof required, particularized pleading requirements, special rules for corporate defendants, and different scienter requirements. *See Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, 423-24, 55 P.3d 763, 766-67 (Ariz. 2002); *Vaughn v. Monroe*, 113 Or.App. 647, 649, 833 P.2d 1331, 1333 (Or. Ct. App. 1992); *Dailey v. North Coast Life Ins.*, 129 Wash.2d 572, 575, 919 P.2d 589, 590-91 (Wash. 1996); *Chavarria v. Fleetwood Retail Corp.*, 140 N.M. 478, 486-88, 143 P.3d 717, 725-27 (N.M. 2006); *Erhardt v. Leonard*, 104 Idaho 197, 202, 657 P.2d 494, 499 (Idaho Ct. App.1983); *Country Escrow Service v. Janes*, 121 Ariz. 511, 513, 591 P.2d 999, 1001 (Ariz. Ct. App. 1979); *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 203-04, 3 P.3d 695, 698-99 (N.M. Ct. App. 2000); *Beaudry v. Insurance Co. of the West*, 203 Ariz. 86, 92, 50 P.3d 836, 842 (Ariz. Ct. App. 2002); *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 137 N.M. 524, 537, 113 P.3d 347, 360 (N.M. Ct. App. 2005); *Weaver v. Austin*, 184 Or. 586, 600, 200 P.2d 593, 601 (Or. 1948); *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 29, 105 P.3d 676, 689 (Idaho 2005); OR. Rev. Stat. § 646.638(1) (2003); Wash. Rev. Code § 19.86.090 (1961); N.M. Stat. § 57-12-10(B) (2003); Idaho Code Ann. § 48-605(3) (1971).  Because the legal standards for punitive damages differ markedly among the five states, typicality, adequacy of representation, and predominance are clearly undermined. *See General Tele. Co. of Southwest*, 457 U.S. at 158 fn. 13; Fed.R.Civ.P. 23(b)(3). More practically, Plaintiff has failed to articulate a manageable solution to the problems arising from applying varying laws from the five jurisdictions concerning punitive damages. The complexity of the jury instructions for putative class members' punitive damage claims would almost certainly present a major procedural barrier in this case. Moreover, apart from any procedural difficulties, Plaintiff has failed to persuade the Court that a jury could be clearly instructed regarding, and properly apply, varying laws from five different jurisdictions concerning punitive damages.  These types of manageability issues have generally

14

prevented courts from granting class certification in cases involving claims for punitive damages. *See, e.g.*, *Chilton Water Auth.*, 199 WL 162800 at *8; *Mack*, 169 F.R.D. at 678-79; *Haley*, 169 F.R.D. at 653-54; *In re Tri-State Crematory Litig.*, 215 F.R.D. at 679; *In re Baycol Prods. Litig.*, 218 F.R.D. at 215; *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. at 294.

### B. Failure to Demonstrate Numerosity.

Plaintiff has failed to provide any evidence that could reasonably demonstrate the class he proposes is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). Instead, Plaintiff merely asserts his "belief" that "the class is comprised of thousands of individuals" and that "[n]umerosity is easily satisfied" (Doc. 37). Unsubstantiated assertions and speculative beliefs, however, are insufficient to demonstrate numerosity under the "strict burden of proof" required for class certification. *Reed*, 849 F.2d at 1309.

Plaintiff also argues that Defendant has conceded numerosity. The Court finds no basis in the record for this assertion. Furthermore, as a legal matter, a defendant cannot merely concede numerosity. *See Amchem Products, Inc.*, 521 U.S. at 621-22. The Federal Rules of Civil Procedure set the requirements for maintaining a class action which this Court is bound to enforce, and a hypothetical concession by one party cannot abrogate the requirements for class certification. *See Id.*

The amount in controversy requirement for a class action founded on diversity jurisdiction partially informs this Court's strict scrutiny of numerosity in this case. Indeed, in a class action suit founded upon diversity, the Court finds it would be an exercise in futility to certify a class that is not numerous enough to reasonably meet the jurisdictional requirements of 28 U.S.C. § 1332(d)(2). As a practical matter, this requires the Plaintiff to demonstrate that the proposed class is comprised of a sufficiently large number of claims to meet the $5,000,000 amount in controversy requirement

of 28 U.S.C. § 1332(d)(2).  Based on Plaintiff's allegation that he was overcharged by $370, it would require approximately 13,514 similar claims to exceed the $5,000,000 amount in controversy threshold for a class action based on diversity jurisdiction. 28 U.S.C. § 1332(d)(2).  The "strict burden of proof" required to demonstrate numerosity, coupled with considerations related to the jurisdictional requirements for a class action founded upon diversity, demand much more than Plaintiff's assertion of his unsubstantiated belief that the proposed class is composed of thousands of individuals. *Reed*, 849 F.2d at 1309; 28 U.S.C. § 1332(d)(2).

In *Chesner v. Stewart Title Guar. Co.*, a similar class action lawsuit against a title insurance company, plaintiffs persuasively established numerosity by conducting a sample review of files from the relevant title insurance agents and demonstrating, through statistical analysis and testimonial evidence, that at least several thousand individuals had been overcharged for title insurance. 2008 WL 553773 at *5.  Plaintiff's failure to do the due diligence necessary to provide similar evidentiary support for his numerosity claim not only precludes this Court from certifying the proposed class on numerosity ground, but also calls into question whether Plaintiff and his counsel would expend the effort necessary to prosecute this action vigorously on behalf of the class. *Rutter & Wilbanks Corp.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

## IV.   CONCLUSION.

Plaintiff has failed to meet the requirements for certifying the proposed multi-state class, including the numerosity, typicality, and adequacy of representation requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).[3][4]

---

[3]Because Plaintiff has failed to meet the requirements for certifying the proposed multi-state class, it is unnecessary for the Court to examine whether Mr. Woodard has standing to represent class members outside of New Mexico.

[4]This Memorandum Opinion and Order renders Defendant's outstanding motions moot.

**WHEREFORE,**

    **IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification is **DENIED**.[5]


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

_____

[5]Given its denial of class certification, this lawsuit does not meet the amount in controversy requirement for diversity jurisdiction. 28 U.S.C. § 1332.  The Court, therefore, must dismiss Plaintiff's claims for lack of jurisdiction.